# United States Court of Appeals

*for the*

# Third Circuit

Case No. 25-2390

CHRISTOPHER FABRICANT; MALIKA FABRICANT,

*Plaintiffs-Appellants,*

— v. —

INTAMIN AMUSEMENT RIDES INT CORP. EST; INTERNATIONAL
AMUSEMENTS INC; ING-BURO STENGEL CMBH; MARTIN &
VLEMINCKX LTD; MARTIN & VLEMINCKX USA, LLC; JOHN DOES 1-20;
ABC CORPORATIONS 1-10; SIX FLAGS THEME PARKS INC,

*Defendants,*

INTARIDE, also known as Intamin Ltd; SIX FLAGS GREAT
ADVENTURE, LLC; INTAMIN LTD.,

*Defendants-Appellees.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

## BRIEF FOR DEFENDANT-APPELLEE
## SIX FLAGS GREAT ADVENTURE LLC

CHRISTOPHER A. GULLA
MURPHY SANCHEZ
*Attorneys for Defendant-Appellee*
  *Six Flags Great Adventure LLC*
309 Fellowship Road, Suite 200
Mount Laurel, New Jersey 08054
(267) 367-5503
cgulla@murphysanchez.com

CP COUNSEL PRESS    (800) 4-APPEAL • (387619)

## CORPORATE DISCLOSURE STATEMENT

Six Flags is a New Jersey limited liability company with one member

holding all membership interests. That sole member is Six Flags Theme Parks Inc.

MURPHY SANCHEZ PLLC

/s/ CHRISTOPHER A. GULLA
Christopher A. Gulla (NJ 062262013)
East Gate Center
309 Fellowship Road, Suite 200
Mt. Laurel, NJ 08054
(856) 444-5503
Counsel for Defendant-Appellee
Six Flags Great Adventure LLC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………….… iii

INTRODUCTION …………………........................................1

STATEMENT OF ISSUES …………………………………… 2

STATEMENT OF THE CASE …………………………….…… 3

    A. New Jersey's Amusement Regulations
       And Injury Reporting Requirement ……………………… 3

    B. Injury Reporting Requirement Signs At The Park……………… 5

    C. April 23, 2017 Incident And Following Activities Of
       Significance By Fabricant Before He Provided
       Six Flags With Notice Of His Claims ………………………. 7

    D. Fabricant's First Reporting Of His Claims To Six Flags
       In April 2019 …………………………………………… 11

    E. Fabricants' Proposed Human Factors Expert,
       Robert Sugarman …………………………………………….. 11

SUMMARY OF ARGUMENT.............................................. 17

STANDARD AND SCOPE OF REVIEW…………………… 17

ARGUMENT …………………………………………….... 18

    A. THE DISTRICT COURT CORRECTLY CONSIDERED,
       INTERPRETED, AND APPLIED ALL RELEVANT
       STATE COURT DECISIONS AND TRENDS …………..… 18

        1. The district court correctly considered, interpreted,
          and applied the two state court cases addressing
          New Jersey's Injury Reporting Requirement ….…….. 19

i

2. The district court also correctly considered and/or
applied other court decisions and legal trends ……………25

B. THE DISTRICT COURT CORRECTLY EVALUATED AND
APPLIED THE LEGISLATIVE HISTORY AND
POLICIES UNDERLYING CARSA ……………………………… 28

1. The district court's ruling is supported by all underlying
policies and legislative history significant to CARSA …… 28

2. There is no legitimate reason or basis to disrupt the
DCA's findings concerning the Park's Injury Reporting
Requirement Signs being in full compliance
with controlling regulations ………………………………… 34

C. THE OPINIONS OF FABRICANTS' PROPOSED HUMAN
FACTORS EXPERT ARE UNRELIABLE,
INACCURATELY DESCRIBED, AND DO NOT PRESENT
A SUFFICIENT BASIS TO REVERSE THE DISTRICT
COURT'S RULING ………………………………………………..... 38

CONCLUSION................................................................................................ 44

# TABLE OF AUTHORITIES

## Cases

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) ………………..………. 18

Burgh v. Borough Council of Borough of Montrose,
251 F.3d 465 (3d Cir. 2001) …………….………………………………..………. 26

Canty v. Ever-Last Supply Co.,
685 A.2d 1365 (N.J. Super. L. 1996) ………………………………….……... 27

Diaz v. Johnson Matthey, Inc.,
893 F. Supp. 358, 373 (D.N.J. 1995) ………………………...………….……… 42

Doerflein v. Six Flags Great Adventure,
2006 WL 392980, at *1
(N.J. Super. App. Div. Feb. 22, 2006) ……... 17, 19, 21, 22, 23, 24, 25, 28, 38, 44

Dwyer v. Cappell, 762 F.3d 275 (3d Cir. 2014) …………………………….…….. 18

Gurrieri v. William Zinsser & Co., Inc.,
728 A.2d 832 (N.J. Super. A.D. 1999) …………………….…..…………….. 27

Lopez v. Gillian's Pier,
820 A.2d 100 (N.J. Super. App. Div. 2003)……………....17, 19, 20, 23, 25, 28, 44

Matheis v. CSL Plasma, Inc., 936 F.3d 171 (3d Cir. 2019)……………….……. 17

Montgomery Cnty. Pa. v. MERSCORP Inc.,
795 F.3d 372 (3d Cir. 2015) …………………………………….…….… 19, 28

Nicosia v. Wakefern Food Corp., 643 A.2d 554  (N.J. 1994)……………….…..26

Pinson v. Perera, Civ. No. 19-17227, 2020 WL 3542383 at *4-5
(D.N.J. June 30, 2019) ……………….………………………….………. 26

Player v. Motiva Enter., LLC, No. 02-3216,
2006 WL 166452, at *5 (D.N.J. Jan. 20, 2006) ……………………….…….….. 42

<u>Rowse v. DSC/Purgatory, LLC,</u>
2018 Colo. Dist. LEXIS 80, at *1
(Colo. Dist. Ct., La Plata County, Feb. 5, 2018) …………………..…… 14, 43

<u>Sellitto v. Litton Sys., Inc.,</u>
881 F. Supp. 932, 937 (D.N.J. 1994)………………………………………. 27

<u>Serhin v. Bora Corp.,</u> 96 F.3d 66 (3d Cir. 1996)…………………………… 18

## **Statutes**

Amusement Park Safety and Fair Liability Act ("APSFLA") …. 28, 29, 30, 32

New Jersey Tort Claims Act …………………………………..………...….. 26

Federal Hazardous Substances Act,
15 U.S.C.A. § 1261 ("FHSA") …………………………………………...…… 27

<u>N.J.S.A.</u> §5:3-31, *et. seq.* ("CARSA")……. ………………..2, 3, 11, 12, 13, 15,
          17, 20, 21, 23, 24, 26, 28, 29, 30, 32, 34, 36, 37, 38, 44

<u>N.J.S.A.</u> §5:3-33 ………………………………………………………..… 3

<u>N.J.S.A.</u> §5:3-36.2 ……………………………………………….…… 5, 37

<u>N.J.S.A.</u> §5:3-40 ………………………………………………….……. 3

<u>N.J.S.A.</u> §5:3-41 …………………………………………………..……. 3

<u>N.J.S.A.</u> §5:3-41.1 ………………………………………………………. 3

<u>N.J.S.A.</u> §5:3-44 ……………………………………………………...… 3

<u>N.J.S.A.</u> §5:3-53 ………………………………………………………… 3

<u>N.J.S.A.</u> §5:3-54 ………………………………………………………… 3

<u>N.J.S.A.</u> §5:3-57 …………………………………………………… 12, 14

N.J.S.A. §5:3-57(a) …………………………………………………… 4

N.J.S.A. §5:3-57(b) ………………………………………………… 36

N.J.S.A. §5:3-57(c) …………………………………………… 4, 5, 6, 37

N.J.S.A. §5:3-58 … ……………………………………….…… 4

Title VII of the Civil Rights Act of 1964 …………………………….…… 26

Uniform Commercial Code ………………………………………… 26

**Administrative Codes**

N.J.A.C §5:14A, *et. seq.* ………………………..….. 2, 3, 5, 12, 15, 32, 36, 37

N.J.A.C §5:14A-1.1 …………………………………………….… 39

N.J.A.C §5:14A-4.12 ……………………………………………… 4, 6, 37

N.J.A.C §5:14A-9.33 ……………………………………………….… 5

**Rules**

Fed. R. Civ. Pr. 56 ……………………………………………….. 18

**Other Authorities**

American Society for Testing and Materials ("ASTM") ……………… 13, 14, 43

ANSI B77.1 …………………………………………………….….. 39

ANSI/IAF-9 …………………………………………………….... 39

ANSI Z535.2 ……………………………………….. 14, 15, 16, 17, 39, 40, 41

Letter from James J. Florio, Governor, State of New Jersey –
Executive Department, to the General Assembly, at 1-2 (Sept. 10, 1992) ……. 30

Merriam Webster Dictionary ……………………………………….……… 32

P.L. 1992, Chapter 118, Assembly No. 917,
Third Reprint, at 1 (Oct. 22, 1992) …………………………………………….. 29

Press Release, Office of the Governor of New Jersey,
S-1135 – Carnival-Amusement Rides Safety Act (May 29, 1975) …………… 29

"What Is A Warning And When Will It Work?", Proceedings
Of the Human Factors Society 33rd Annual Meeting, 1989 …………….16, 41, 42

# INTRODUCTION

Appellants Christopher Fabricant ("Fabricant") and Malika Fabricant (collectively, the "Fabricants") claim that, on April 23, 2017, Fabricant sustained injury while riding the Kingda Ka rollercoaster ("Kingda Ka") at Six Flags Great Adventure in Jackson Township, New Jersey (the "Park").

Fabricant was immediately aware of a connection between his alleged injuries and his Kingda Ka ride experience. Even more, just 10-days later and as soon as May 3, 2017, Fabricant's medical doctors began affirmatively notifying him of a connection between his injuries and Kingda Ka. In June 2017, within 90-days of his riding of Kingda Ka, Fabricant began contemplating legal action and discussing his claims with personal injury attorneys. Over the next approximately 2-years, Fabricant made multiple return visits to the Park at the instruction of his attorneys for the purpose of evaluating and photographing signage. Nevertheless, Fabricant completely failed to provide any form of notice of his alleged injury or claims to Appellee Six Flags Great Adventure LLC ("Six Flags") until 2-years later in April 2019 and failed to provide the statutorily required written notice of his claims to Six Flags until his Complaint was first served on April 29, 2019.

On July 2, 2025, the district court granted Six Flags summary judgment by way of a meticulously written 45-page Opinion and Order. The district court held

that Fabricants' claims against Six Flags were time-barred under the injury reporting requirements established by the Carnival-Amusement Rides Safety Act, N.J.S.A. §5:3-31, *et. seq.* ("CARSA"), and Chapter 14A, Carnival-Amusement Rides of Title 5, N.J.A.C. In doing so, the district court properly analyzed the applicable legislative intent and history, underlying policy and regulatory framework, relevant state court decisions, and totality of evidence on the record. As such, the district court's ruling in favor of Six Flags should be affirmed.

## STATEMENT OF ISSUES

Fabricants' only remaining claims against Six Flags are for negligence and loss of consortium. (Appx40-57, Amended Complaint at Third Count and Fifth Count). There are no failure to warn or design defect claims against Six Flags. As such, the sole issue presented for review *as to Six Flags* is:

1. Did the district court err in its decision to grant Six Flags' motion for summary judgment, and to bar Fabricants' claims against Six Flags for failure to comply with the CARSA injury reporting requirement?

## STATEMENT OF THE CASE

### A. New Jersey's Amusement Regulations And Injury Reporting Requirement

The State of New Jersey has an established regulatory framework, managed and enforced by the Department of Community Affairs ("DCA"), governing all amusement parks and rides operating within its borders. N.J.A.C. §5:14A, *et seq.* Specifically, through N.J.A.C. §5:14A, *et seq.* and CARSA, a complex framework exists to monitor the activities of all amusement ride operators and to enforce compliance with all regulatory requirements.

New Jersey's regulations mandate a 13-member Advisory Board within the DCA, as well as the DCA's employment of a Chief Inspector and as many additional inspectors and other employees needed to administer and enforce CARSA. N.J.S.A. §5:3-33, §5:3-40. DCA members consistently conduct a broad range of different inspections upon amusement park operators such as Six Flags, inclusive of annual inspections, safety inspections, and operational inspections. N.J.S.A. §5:3-41; N.J.A.C. §5:14A *et seq.* In the event of a regulatory violation, the DCA's enforcement mechanisms include suspending or revoking operating permits, ordering a temporary cessation of operations, initiating injunctive proceedings through a court of competent jurisdiction and implementing fines of up to $5,000 per day. N.J.S.A. §5:3-41.1, §5:3-44, §5:3-53, §5:3-54.

Included within New Jersey's amusement regulations are stringent requirements related to a rider's need to timely put park operators on notice of any alleged injuries (the "Injury Reporting Requirement"):

> "As a precondition to bringing any suit in connection with an injury against an amusement park operator, a rider shall report in writing to the amusement park operator all the details of any accident within 90 days from the time of the incident giving rise to the suit." N.J.S.A. §5:3-57(a).

N.J.S.A. §5:3-57(c) outlines the specific minimum information a rider *must* include in his written report to the amusement park operator, and then N.J.S.A. §5:3-58 states in relevant part:

> "A rider who fails to give the report required by section 3 of this act within 90 days from the time of the accident or incident may be permitted to give the report at any time within one year after the accident or incident at the discretion of a judge of the Superior Court if the operator is not substantially prejudiced thereby. The inability of the amusement park operator to locate and bring within the jurisdiction of the court needed witnesses for his defense shall be considered by the court in determining whether the operator has been substantially prejudiced by the delay. Application to the court for permission to give a late report shall be made upon motion based on affidavits showing sufficient reason for the rider's failure to give the report within 90 days from the time of the accident or incident." N.J.S.A. §5:3-58.

N.J.S.A. §5:3-57(c) and N.J.A.C. §5:14A-4.12 require the park operator to conspicuously post notices concerning the Injury Reporting Requirement at specific locations throughout the park ("Injury Reporting Requiring Signs") by stating in relevant part:

"The precondition in subsection a. of this section is not applicable unless the operator conspicuously posts notice of the reporting requirement in English and one other language deemed appropriate by the amusement park operator and in at least five different locations on the premises, including each entrance and exit, each place designated for receiving reports of accidents and injuries during business hours and each place designated as a first aid station." N.J.S.A. §5:3-57(c).

Notably, other unrelated sections of the regulations, such as N.J.S.A. §5:3-36.2 and N.J.A.C. §5:14A-9.33, also make use of the "conspicuous" terminology while outlining park operators' obligation to post various forms of other required signage such as individual ride rules and warning signs. While "conspicuous" based language is used in as many as 7 separate sections of the regulations the DCA is tasked with administering and enforcing, the legislature elected to not provide the DCA with an express definition of the term within the regulations themselves. N.J.S.A. §5:3-31, *et. seq.*, N.J.A.C. §5:14A, *et. seq.*

**B. Injury Reporting Requirement Signs At The Park**

The Park's Injury Reporting Requiring Signs have remained identical in size, content and location from 2013 through April 2023. (Appx286-289, Affidavits of Six Flags representatives Zakar and Chamberlain). On April 21, 2023, DCA certified safety inspector Kevin Nolan affirmatively provided Six Flags with written confirmation that these Injury Reporting Requirement Signs were in "full

compliance" with controlling regulations. (Appx291). DCA inspector Nolan's written findings, paired with affidavits of Six Flags representatives Edward Zakar and Brian Chamberlain outlining the signs present at the Park sequentially from 2013 through April 2023, directly confirm that the Injury Reporting Requirement Signs in place at the time of Fabricant's alleged April 2017 incident were DCA inspected and deemed compliant in all regards. (Appx291) (Appx286-289).

In addition to the above, there is no evidence in the record suggesting that the DCA has *ever* found Six Flags' Injury Reporting Requirement Signs to be in violation of any aspect of the controlling regulations. Likewise, no evidence exists in the record to suggest that the DCA has ever failed to complete any necessary inspections at the Park as mandated by the controlling regulations.

The Injury Reporting Requirement Signs at the Park are posted in at least 6 different locations, including all locations required by N.J.S.A. 5:3-57(c) and N.J.A.C. §5:14A-4.12. (Appx216, Sugarman 03/20/21 report at p. 6, Conclusions) (Appx250, Sugarman 04/15/21 dep Tr. 95:12-96:12) (SA385-397, Sala 03/09/22 report at p. 2-3). This includes, but is not limited to, on the front entrance door of the Park's First Aid station and on the Park's Guest Relations building in the immediate location where persons speak with Park representatives. (SA392-397, Sala 03/09/22 report at Appendix A Photographs). The Injury Reporting Requirement Signs read

as follows:

<div align="center">**Accident or Injury Reporting Requirement**</div>

In order to bring suit against Six Flags Great Adventure LLC in connection with an injury you must report it in writing, giving all details, within ninety (90) days of the incident giving rise to the suit.

A report shall be made at any of the following locations: Guest Relations (located at the front entrance) or First-Aid (located behind Garden State Grill in the Boardwalk)

(SA392-397, Sala 03/09/22 report at Appendix A).

The same message is then repeated in Spanish.

In addition to the DCA's conclusion that these signs were in full compliance with controlling regulations, Six Flags' Human Factors Expert Joseph Sala has issued a report opining that the signs are sufficiently conspicuous and in full compliance with all controlling regulations. (SA385-397).

**C. April 23, 2017 Incident And Following Activities Of Significance By Fabricant Before He Provided Six Flags With Notice Of His Claims**

Fabricant claims he felt "excruciating, unbearable pain in his shoulders" and pain "so unbearable that seconds seemed endless" during his Kingda Ka ride on April 23, 2017. (Appx501, Plaintiff Interrogatory Answers at No. 22). Fabricant testified that he felt immediate pain in his shoulders during the launch of Kingda Ka and then felt pain so severe he described it as "pain like never before"

throughout the remainder of the ride cycle. (SA148-149, 04/05/21 Fabricant dep T. 147:7-148:23). When the ride ended, Fabricant claims he had visible bruising on his right shoulder. (SA192-194, 04/05/21 Fabricant dep T. 191:21-193:20).

At no point before leaving the Park on April 23, 2017 did Fabricant ever report his experience or injuries to any agents of Six Flags, nor did he report the alleged incident at the Park's First Aid or Guest Relations locations. (SA151, 04/05/21 Fabricant dep T. 150:12-150:24) (SA286 and SA322, 06/03/21 Fabricant dep T. 430:12-430:16 and 466:10-466:12). Even when his Kingda Ka ride car first returned to the station following the relevant ride cycle on April 23, 2017, Fabricant did not verbalize to any of the multiple Six Flags workers stationed in the area that he had felt severe pain during the ride or that he had sustained injuries of any kind on the ride. (SA150, 04/05/21 Fabricant dep T. 149:8-149:17).

On May 3, 2017, Fabricant had a medical consultation with Dr. Brian Halpern and reported neck and back pains that he exclusively associated with his riding of a rollercoaster 10-days prior. (SA364-369).

On May 13, 2017, 20-days after riding Kingda Ka, Fabricant visited Jersey Shore University Medical Center to report that he was injured while riding a rollercoaster in April 2017 and was medically noted to have "had roller coaster injury." (SA370-379). On May 14, 2017, 21-days after riding Kingda Ka,

Fabricant treated with Dr. Todd Albert of The Hospital for Special Surgery and reported an injury with symptoms that he claimed first started following his riding of a rollercoaster at the Park. (SA380-382).

In June 2017, within 90-days of riding Kingda Ka and while taking a deposition in an unrelated legal matter, Fabricant claims he was wearing a neck brace and discussed with the attorneys in the room that he "had been injured on a roller coaster." (SA153-154, 04/05/21 Fabricant dep T. 152:2-153:6). During a discussion with an attorney in June 2017, Fabricant requested recommendations for a personal injury lawyer so that he "could pursue appropriate legal action" related to the injury he believed he sustained at the Park. (SA153-154, 04/05/21 Fabricant dep T. 152:2-153:6).

In July or August of 2017, Fabricant consulted with a personal injury lawyer to discuss the Six Flags incident and his pursuit of legal action. (SA153-154, 04/05/21 Fabricant dep T. 152:2-153:13). In conjunction with speaking to his former personal injury lawyer in July or August 2017 through February or March 2019, Fabricant received legal advice from the attorney and believed the attorney was serving as his legal counsel. (SA153-158, 04/05/21 Fabricant dep T. 152:2-157:20). Fabricant admitted that he consulted with multiple attorneys before April

23, 2019 for the purpose of discussing the Kingda Ka incident and his pursuit of legal action. (SA154-155, 04/05/21 Fabricant dep T. 153:15-154:21).

In "either fall 2017 or fall 2018" and at a time when he had obviously already been long aware of a possible connection between his injuries and April 23, 2017 Kingda Ka ride, Fabricant visited the Park and took photographs at the instruction of his then attorney. (SA159-166, 04/05/21 Fabricant dep T. 158:3-159:22, 165:12-165:18). During this visit, Fabricant walked around the Park reading and photographing signage and posted warnings. (SA282-284, 06/03/21 Fabricant dep T. 426:14-428:19).

Yet again, "in April of 2019", Fabricant visited the Park to "gather information" for his newest and current attorney. (SA169-173, 04/05/21 Fabricant dep T. 168:17-169:4, 171:13-172:11). During this visit, Fabricant successfully located and photographed various Injury Reporting Requirement Signs posted around the Park without assistance. (Appx436-439, Fabricant Answers to Interrogatories No. 6) (SA304-357, 06/03/21 Fabricant dep T. 448:22-501:8). He also visited the First Aid office and verbally expressed for the very first time ever to a Six Flags representative there that he was interested in filing a report related to an April 23, 2017 incident. (SA354-356, 06/03/21 Fabricant dep T. 498:13-500:8). However, Fabricant still failed to complete or prepare any written reports related to

the alleged April 23, 2017 incident at this time. (SA354-356, 06/03/21 Fabricant dep T. 498:13-500:8).

### D. Fabricant's First Reporting Of His Claims to Six Flags In April 2019

Fabricant did not provide any form of notice of his claims or of the alleged April 23, 2017 incident to Six Flags at any time during the years of 2017 or 2018. (SA152-167, 04/05/21 Fabricant dep T. 151:15-152:1, 159:1-159:6, 165:12-166:8). Six Flags was not provided with any written notification of Fabricant's claims until after his original Complaint was first served upon Six Flags on April 29, 2019. (SA384, Notice of Service of Process).

Aside from the alleged injuries first reported by Fabricant 2-years later in April 2019, the April 23, 2017 Kingda Ka ride cycle at issue was completely unremarkable. There exists no evidence of any ride related mechanical problems, operational problems and/or other reported injuries of any kind or nature concerning Kingda Ka and the April 23, 2017 ride cycle at issue.

### E. Fabricants' Proposed Human Factors Expert, Robert Sugarman

Fabricants' proposed Human Factors Expert Robert Sugarman ("Sugarman") concedes that Six Flags' Injury Reporting Requirement Signs exist in the correct number and locations as required by CARSA. (Appx216, 03/20/21 Sugarman

report at Conclusions, p. 6) (Appx250, Sugarman 04/15/24 dep. Tr. 95:12-96:12). Sugarman further admits that no evidence exists to suggest that the DCA has ever found the Park's Injury Reporting Requirement Signs to be in violation of the conspicuity requirements imposed by CARSA, N.J.A.C. §5:14A, *et seq*., and/or any other controlling regulations. (Appx253-258, Sugarman 04/15/25 dep Tr. 108:22-109:5, 129:3-129:15 and 111:20-113:20).

Aside from conducting a site inspection of the Park on November 6, 2020, Sugarman has never been to a New Jersey amusement park in his life. (Appx234-235 and Appx259, Sugarman 04/15/25 dep Tr. 31:24-34:20 and 133:4-133:21). Other than his work on Fabricants' case, Sugarman has never inspected or opined on Injury Reporting Requirement Signs at any other amusement park and is completely unable to describe what, if anything, other New Jersey park operators do differently with their Injury Reporting Requirement Signs as compared to Six Flags. (Appx259-274, Sugarman 04/15/25 dep Tr. 132:20-135:10, 186:14-188:22 and 190:17-190:23).

Sugarman has no idea what N.J.A.C. §5:14A *et. seq.* is and is completely unfamiliar with all aspects of the code, including the standards adopted therein. (Appx255-257, Sugarman 04/15/25 dep Tr. 116:21-117:9 and 123:3-124:4). Aside from the one single section of N.J.S.A. §5:3-57, Sugarman has no knowledge

concerning CARSA. (Appx235, Appx250, Sugarman 04/15/25 dep Tr. 35:16-36:5 and 96:3-97:24). Sugarman also has no knowledge about how the State of New Jersey administers and enforces any aspect of CARSA, and is completely unaware of the inspections, permit, and enforcement mechanisms established by the regulations. (Appx251-253, Sugarman 04/15/25 dep Tr. 98:20-99:6 and 103:14-108:21). Sugarman has never been qualified or certified as an amusement safety inspector in New Jersey or any other state. (Appx259-274, Sugarman 04/15/25 dep Tr. 132:11-132:19 and 191:8-192:5).

Sugarman has never worked at an amusement park, has never been involved in implementing amusement park policies, and has no experience deciding the location or layout of amusement park signs. (Appx264, Appx274, Sugarman 04/15/25 dep Tr. 190:24-192:5 and 150:10-151:18). Sugarman is not a member of any groups or committees servicing the amusement industry, does not know what ASTM International Committee F24 on Amusement Rides and Devices is, and has never participated in any studies related to amusement park signage. (Appx264-274, Sugarman 04/15/25 dep Tr. 190:24-192:5 and 150:10-151:18).

Sugarman has never been qualified as an expert in a case involving injury reporting notice requirement signs, injury reporting notice requirement signs at an amusement park or any signage issues related to amusement parks. (Appx272-274,

Sugarman 04/15/25 dep Tr. 183:6-184:21 and 186:4-190:23). While Sugarman incorrectly claims that he's testified in one prior amusement park signage case, a case captioned "Rowse" which he claims involved attraction specific signage for a bungee ride in New Mexico, investigation has confirmed this case did not involve an amusement ride or park and that Sugarman's opinions were partially precluded in the matter due to his improper attempt to apply ASTM standards meant for amusement rides to a bungee trampoline court located at a mountain resort .[1] (Appx272-274, Sugarman 04/15/25 dep Tr. 183:6-184:21 and 186:14-190:23).

Setting aside qualifications, Sugarman has proffered an opinion that Six Flags' Injury Reporting Requirement Signs were not conspicuous as required by N.J.S.A. §5:3-57. (Appx211-224, Sugarman reports). Sugarman bases this opinion upon ANSI Z535.2, a treatise from 1989 and what he describes as general and specific conspicuity factors. (Appx211-224, Sugarman reports).

---

[1] Rowse v. DSC/Purgatory, LLC, 2018 Colo. Dist. LEXIS 80, at *1 (Colo. Dist. Ct., La Plata County, Feb. 5, 2018) relates to injuries sustained on a bungee trampoline court at a mountain resort known as Purgatory Resort. By Order and Opinion dated February 5, 2018, District Court Judge William Herringer precluded Sugarman's testimony attempting to apply ASTM standards to trampoline courts, noting that the ASTM standards apply to amusement rides, not trampoline courts, and ruling that Sugarman's testimony was therefore inappropriate. Id. at *13.

The ANSI Z535.2 standard relied upon by Sugarman is a completely voluntary standard that is not codified or incorporated into CARSA or N.J.A.C §5:14A, *et. seq.* (Appx244-261, 04/15/25 Sugarman dep T.73:15-74:10, 114:21-115:6, 117:13-121:19 and 137:23-138:22) (SA475-476, ANSI Z535.2 at Disclaimer and p. i). The ANSI Z535.2 standard does not include any language or examples related to injury reporting signs and Sugarman admits that signs containing information about preserving legal rights fall outside the scope of this standard:

> Q: So signage about preserving legal rights is outside the scope of this document?
> A: Yes.
> (Appx248, 04/15/25 Sugarman dep T. 89:9-89:12).

Significantly, the explicit purpose of ANSI Z535.2 does not include any element of establishing conspicuity or guidelines for non-safety signs:

> "2.2   Purpose
>
> The purpose of this standard are to:
>
> (a) Establish a uniform and consistent visual layout for safety signs to be located in facilities and in the environment;
> (b) Minimize the proliferation of designs for environmental and facility safety signs; and
> (c) Establish a national uniform system for signs that communicate safety information."
>
> (SA488, ANSI Z535.2 at p. 1, Section 2 Scope and Purpose).

When questioned about how ANSI Z535.2 does not establish *conspicuous* or *effective* layout for signage of any kind, especially not Injury Reporting Requirement Signs that do not include safety information, Sugarman described his personal belief that this is somehow a "defect" and "deficiency" in the ANSI Z535.2 standard itself. (Appx245-246, 04/15/25 Sugarman dep Tr. 75:10-81:23).

Regarding the 1989 treatise cited by Sugarman, "What Is A Warning And When Will It Work", its primary concern is "the prevention of accidents." (SA525, Treatise at p. 1). The treatise includes no content related to the amusement industry or injury notice reporting requirement signs, and was not drafted by any authors connected to the amusement industry. (SA524-530) (Appx249, 04/15/25 Sugarman dep Tr. 91:21-93:12). Moreover, the treatise is not adopted or incorporated into the New Jersey amusement regulations and includes commentary such as "Even a very conspicuous label can be ignored." (SA527, Treatise at p. 3, Processing the Message, Format).

Finally, Sugarman is unable to identify or explain where any of the definitions of "conspicuous" within his reports came from and admits that such definitions may be his own personal definitions of the term. (Appx214; Appx240-243, Sugarman 04/15/25 dep Tr. 57:3-68:7). Regarding the "general conspicuity factors" and "specific conspicuity factors" listed within his report, Sugarman is incapable of

citing to any specific source, document, publication, dictionary, encyclopedia, research, or material other than ANSI Z535.2 to validate these factors. (Appx214-216; Appx241-243, 04/15/25 Sugarman dep Tr. 58:9-69:19).

## SUMMARY OF ARGUMENT

The district court's granting of summary judgment in favor of Six Flags should be affirmed by the Third Circuit. The district court correctly interpreted and applied the on-point state court decisions of Lopez v. Gillian's Pier, 820 A.2d 100 (N.J. Super. App. Div. 2003) and Doerflein v. Six Flags Great Adventure, 2006 WL 392980, at *1 (N.J. Super. App. Div. Feb. 22, 2006), as well as a series of state court decisions involving statute of limitations and conspicuousness disputes in other contexts. The district court's ruling strongly aligns with the underlying policy of CARSA and recognizes the unintended risks and problems associated with the theories advanced by the Fabricants. Finally, the district court sufficiently balanced the implications of all opinions offered by Fabricants' proposed human factors expert before correctly granting summary judgment to Six Flags.

## STANDARD AND SCOPE OF REVIEW

This Circuit reviews *de novo* a grant of summary judgment. Matheis v. CSL Plasma, Inc., 936 F.3d 171, 176 (3d Cir. 2019). The reviewing Court applies the

same test the district court would use. Id., citing Dwyer v. Cappell, 762 F.3d 275, 279 (3d Cir. 2014).

Summary judgment shall be rendered if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56; See also Serhin v. Bora Corp., 96 F.3d 66, 69 (3d Cir. 1996). A fact is "material" only if its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" only if there is sufficient evidence from which a reasonable jury could find for the non-moving party. Id. The task for the Court is to inquire "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

## ARGUMENT

### A. THE DISTRICT COURT CORRECTLY CONSIDERED, INTERPRETED, AND APPLIED ALL RELEVANT STATE COURT DECISIONS AND TRENDS

The district court correctly considered and analyzed all relevant state court decisions before granting summary judgment to Six Flags. As noted by the district court, when there is no decision from the state's highest court that is directly on

point, the district court must apply the interpretation of state law by the state's own courts to predict how the highest court would resolve the issue at hand.

Montgomery Cnty. Pa. v. MERSCORP Inc., 795 F.3d 372, 376 (3d Cir. 2015). In doing so, the district court shall take into consideration opinions of the state's intermediate courts, as well as policies underlying applicable legal doctrine, current trends in the law and decisions of other courts. Id.

1. **The district court correctly considered, interpreted and applied the two state court cases addressing New Jersey's Injury Reporting Requirement**

The district court correctly considered, analyzed and applied the two on-point state court cases of Lopez and Doerflein. Through its review of these state court decisions, the district court properly identified and applied the principles that (i) the 90-day and 1-year Injury Reporting Requirement components must be strictly construed and enforced, (ii) a claimant's failure to act will not be excused when he is aware of a connection between his injuries and an amusement ride, and (iii) courts will not allow conspicuous standards proposed by claimants to save untimely claims when Injury Reporting Requirement Signs are in the correct number and place as required by the controlling regulations.

In Lopez, a plaintiff amusement park patron brought a negligence claim against an amusement park operator by claiming he was caused to suffer a stroke due to a

head impact sustained during a rollercoaster ride on August 22, 1998. Id. at 411. The plaintiff, who claimed to be unaware of his injury while at the park, did not report the event to the park operator before leaving. Id. However, later in the evening on August 22, 1998, the plaintiff experienced neurological symptoms and was told by medical staff he had suffered a stroke. Id. On May 28, 1999, within 1-year of plaintiff's rollercoaster ride, plaintiff's physician advised him for the first time of a possible connection between his stroke and the August 22, 1998 rollercoaster ride. Id. at 412. Despite being advised of and aware of this connection in May 1999, the plaintiff did not provide any notice of his claim to the defendant park operator until an amended complaint was served on November 21, 2000. Id.

At the completion of discovery, the defendant park operator moved to dismiss the plaintiff's complaint on the grounds that plaintiff failed to comply with the Injury Reporting Requirement. After the trial court reached a decision in favor of defendant, the plaintiff appealed by contending that plaintiff was not afforded the benefit of the discovery rule and that CARSA violates equal protections by denying injured plaintiffs access to the court and by drawing an unfair distinction in favor of amusement parks to the detriment of others. Id. at 412.

The Appellate Division affirmed the trial court's decision to dismiss the Lopez claim as time-barred under CARSA. In doing so, the Appellate Court mentioned

that the plaintiff "never filed the required notice at all" and did not provide the park operator with any notice whatsoever until an amended complaint was served on November 21, 2000 "some two years after the day on which the notice should have been filed and fifteen months after the time when the notice could have been filed had a judge so ordered." Id. at 413 (emphasis added). The Appellate Court also held that, because the plaintiff's physician alerted him to the connection between his injury and the rollercoaster on May 28, 1999, which was only about 9-months after the incident date and within the 1-year extension period permitted by CARSA, the plaintiff failed to provide timely notice to the operator and to seek an extension of the 90-day reporting deadline. Id. at 414 (stating "plaintiffs' failure to act cannot be excused") (emphasis added).

In Doerflein, a case involving the same exact Park in Jackson Township, NJ where Fabricant alleges to have been injured, the plaintiff claimed to have suffered a head injury while riding a rollercoaster on May 28, 2001. Id. at 1. Although the plaintiff admitted he was aware of his injury immediately on May 28, 2001, he failed to report the incident to Six Flags that day or at any time prior to the filing of his complaint some 5-months later on November 1, 2000. Id.

After the Doerflein trial court granted summary judgement to Six Flags due to the claims being time-barred, the plaintiff appealed by arguing the trial court erred

in failing to find that his complaint itself could act as a motion to obtain an extension of the 90-day statutory reporting requirement to 1-year and in rejecting his assertion that Six Flags' Injury Reporting Requirement Signs were not sufficiently conspicuous. Id. Rejecting the plaintiff's arguments, the Appellate Division held "We decline plaintiff's implicit invitation to adopt a subjective standard for conspicuousness in place of compliance with the statute itself." Id. at *2 (emphasis added). In reaching this conclusion concerning the same exact Park involved in Fabricants' claims, the Appellate Court stated:

> "At the time of plaintiff's visit to the amusement park, it is undisputed that the signs were posted in six locations, including the two main entrances, the main exit, the overflow exit, and two first aid offices. Each sign included an explanation of the reporting requirement under the statute. It is also undisputed that the signs had been inspected by representatives of the Department of Community Affairs. There is, in short, no evidence in the record to suggest that the defendant Six Flags failed to comply with the requirement that it post signs that were both conspicuous in place and number so as to satisfy the statutory prerequisite to the reporting requirement." Id.

The Appellate Court in Doerflein went on to state that the plaintiff "never filed a notice relating to his injury" and that "Although he filed his complaint within one year of the date on which he asserts he was injured, by failing to seek leave as the statute requires, he effectively deprived the judge of the opportunity to exercise the

discretion granted by the statute itself to evaluate whether the park operator had suffered prejudice as a result of the delay." Id. at *3 (emphasis added).

In the instant matter, the district court correctly interpreted and applied the Lopez and Doerflein decisions before granting summary judgment to Six Flags. The district court recognized that both state court decisions treat the Injury Reporting Requirement as a statute of limitations that is to be strictly construed and enforced. The district court simultaneously properly analyzed Fabricant's radical failure to act in compliance with CARSA's injury reporting deadlines despite his (i) being aware of a connection between his injuries and Kingda Ka immediately on April 23, 2017, (ii) being repeatedly alerted to this connection by as many as 3 different medical providers in May 2017, (iii) having consulted with personal injury attorneys to pursue legal recourse with time to seek an extension of the 90-day deadline, and (iv) having made multiple return visits to the Park at the instruction of attorneys without ever providing Six Flags with sufficient notice.

The district court also properly interpreted and applied the Doerflein decision when rejecting Fabricants' request for the court to essentially ignore Six Flags' compliance with the Injury Reporting Requirement Sign requirements and to instead allow Fabricants' grossly untimely claims to proceed forward solely based on opinions concerning a lack of conspicuousness of the signs. Not only did the

district court meticulously analyze the <u>Doerflein</u> opinion before applying it to the instant case and Sugarman's proposed opinions, but the court also thoroughly explained its rationale in rejecting each one of Fabricants' attempts to differentiate the instant case from <u>Doerflein</u>. In sum, consistent with and guided by <u>Doerflein</u>, the district court rejected Fabricants' invitation for the court to permit solely opinions about the conspicuousness of Injury Reporting Requirement Signs to overcome a claimant's failure to timely act under the stringently enforced CARSA injury reporting regulations.

Fabricants' argument that the district court incorrectly applied <u>Doerflein</u>, simply due to their proffering of a paid-for proposed human factors expert whom they proclaim makes "objective" findings related to conspicuousness, is flawed and based on a misinterpretation of CARSA and <u>Doerflein</u> itself. <u>Doerflein</u> stands for the principle that courts will not allow solely opinions about the conspicuousness of Injury Reporting Requirement Signs, whether it be the opinion of a plaintiff or of a proposed expert, to save a claim that is untimely under the stringently enforced reporting requirements when the content, placement and number of Injury Reporting Requirement Signs are in compliance. Nevertheless, as described further below, it is noteworthy that Sugarman's opinions are nothing more than purely

subjective opinions which lack factual support and which are based upon materials that are in no way relevant or controlling.

Not only have the Fabricants failed to meaningfully distinguish their case from Lopez and Doerflein, but they have equally failed to convincingly establish that the district court's thorough interpretation, analysis, and application of these cases was incorrect in any regard. In fact, the Fabricants do not even attempt to address the critical principles of Lopez and Doerflein concerning courts strictly constructing the Injury Reporting Requirement and plaintiffs not being excused for their failures to act when they are aware of a possible connection between their injuries and an amusement ride. This, without a doubt, is because the facts surrounding Fabricant's failure to timely report his claims to Six Flags are much worse and are far more aggravated when compared to the plaintiffs in Lopez and Doerflein.

Based upon the on-point cases of Lopez and Doerflein, the district court's decision to grant summary judgment to Six Flags should be affirmed.

**2. The district court also correctly considered and/or applied other court decisions and legal trends**

In addition to the district court's proper application of Lopez and Doerflein, the court appropriately considered and/or applied other court decisions and trends before granting summary judgment to Six Flags.

While describing how the applicable CARSA regulations act as a statute of limitations that must be strictly construed, the district court likened this general principle to court treatment of similar statutory frameworks. The district court cited to Pinson v. Perera, Civ. No. 19-17227, 2020 WL 3542383 at *4-5 (D.N.J. June 30, 2019) to describe how the New Jersey Tort Claims Act 90-day notice of claim requirement is strictly construed and how a claimant's failure to comply with that notice requirement may result in a claim being barred. The district court also cited Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001) as it noted how the 180-day administrative complaint deadline set by Title VII of the Civil Rights Act of 1964 is treated as a statute of limitations.

Although not directly cited in the district court's written opinion, briefs submitted to the district court raised other court decisions and trends involving conspicuousness disputes in other contexts. In a case involving the construction of "conspicuous" as used in the Uniform Commercial Code, the New Jersey Supreme Court held that determining whether something is conspicuous is always a matter of law for courts to decide. Nicosia v. Wakefern Food Corp., 643 A.2d 554, 561 (N.J. 1994) (stating "conspicuousness will always be a matter of law" and "when the facts surrounding the content and placement of a disclaimer are themselves clear and uncontroverted, as in this case, the effectiveness of a disclaimer can be

resolved by the court as a question of law"). Likewise, the district court has held that the prominence and clarity of a disclaimer are questions of law properly addressed in a motion for summary judgment when there are no disputes over the content and placement of the disclaimer. Sellitto v. Litton Sys., Inc., 881 F. Supp. 932, 937 (D.N.J. 1994).

Notably, other state court decisions have rejected plaintiff attempts to raise issues of fact concerning the conspicuousness or effectiveness of labels through expert testimony alone. For example, in Gurrieri v. William Zinsser & Co., Inc., 728 A.2d 832 (N.J. Super. A.D. 1999), the plaintiff engaged an expert to dispute the effectiveness of a warning label that was required to be "conspicuously" placed under the Federal Hazardous Substances Act, 15 U.S.C.A. § 1261 ("FHSA"). However, despite the plaintiff's attempts to create an issue of fact over the conspicuousness of the label through proposed expert opinion, the Appellate Division held that the label met the relevant statutory requirement as a matter of law and affirmed summary judgment for the defendant. Id. at 842-843. As another example, in Canty v. Ever-Last Supply Co., 685 A.2d 1365 (N.J. Super. L. 1996) when a plaintiff expert opined that a warning label failed to meet FHSA language placement and prominence requirements, the court rejected plaintiff's contention

that an issue of fact existed and granted summary judgment to the defendant upon determining that the label complied with all requirements set by the statute.

In sum, even beyond the directly on-point cases of <u>Lopez</u> and <u>Doerflein</u>, the district court's decision to grant summary judgment in favor of Six Flags is supported by additional New Jersey case law.

## B. THE DISTRICT COURT CORRECTLY EVALUATED AND APPLIED THE LEGISLATIVE HISTORY AND POLICIES UNDERLYING CARSA

The district court properly considered, interpreted and applied the legislative history and underlying policies significant to CARSA before granting summary judgment to Six Flags. <u>See</u> <u>Montgomery Cnty. Pa. v. MERSCORP Inc.</u>, *supra*.

### 1. The district court's ruling is supported by all underlying policies and the legislative history significant to CARSA

The district court correctly considered, analyzed and applied the legislative history and policies underlying CARSA before granting summary judgment to Six Flags. Not only did the court's opinion accurately summarize the primary purpose behind CARSA, but it also concisely explained the underlying purpose of relevant supplements made to CARSA's original text through the Amusement Park Safety and Fair Liability Act ("APSFLA").

It is undisputed that CARSA was "designed to provide greater safety at carnivals and [for] amusement[] rides." Press Release, Office of the Governor of New Jersey, S-1135 – Carnival-Amusement Rides Safety Act (May 29, 1975) (on file with New Jersey Statute Library). In 1992, in conjunction with supplementing CARSA through the APSFLA, the legislature noted "[a]musement parks … are attended by a large number of citizens [in New Jersey] and also attract to this State a large number of non-residents, significantly contributing to the tourist industry of this State" and that, as a result, "the allocation of the risks and costs of amusement parks is an important matter of public policy." P.L. 1992, Chapter 118, Assembly No. 917, Third Reprint, at 1 (Oct. 22, 1992) (on filed with New Jersey State Library).

Recognizing that "[t]he amusement park operator is already the subject of significant safety obligations and inspection requirements imposed by existing statutes and regulations", the legislature noted APSFLA was to create an "explicit policy of [New Jersey] which recognizes that amusement rides include risks which must be borne by those who engage in such activities and which are essentially impractical or impossible for the operator to eliminate." Id. The primary purpose of APSFLA was to "state those risks a rider voluntarily assumes for which there can be no recovery and to establish a code for riders."

Significantly, CARSA's current 90-day and 1-year Injury Reporting Requirement deadlines were created through APSFLA. In fact, upon careful analysis of a series of bills introduced by various groups, it was decided that the Injury Reporting Requirement had substantial merit and was 1 of 2 pieces of all proposed legislation to be included in APSFLA. Letter from James J. Florio, Governor, State of New Jersey – Executive Department, to the General Assembly, at 1-2 (Sept. 10, 1992) (on file with New Jersey State Library). The 90-day reporting requirement was "due to the short duration of amusement park season and the difficulty in securing statements from seasonal employees" and "would allow the park operators sufficient opportunity to adequately address any claims which may be asserted by the accident victim." Id. at 2.

Here, the district court's decision to preclude Fabricants' untimely claims against Six Flags is tremendously consistent with the history and policy considerations outlined above. The district court's ruling appropriately balances the overarching policy goals of increasing safety, allocating risks and costs in an industry important to the State's public policy, holding riders accountable for easily recognizable risks they voluntarily assume, and affording park operators sufficient opportunity to adequately address injury claims (including any related safety issues directly or indirectly arising from such injury claims).

Allowing Fabricants' wildly untimely claim to proceed forward under the circumstances presented would be in direct conflict with these underlying policy objectives. As a matter of fact, permitting such untimely claims would actually _decrease the overall safety of the State's amusement parks and rides_.

In the event untimely injury claims like the one brought by Fabricant are allowed, park operators such Six Flags would be completely prevented from efficiently addressing claims and from timely performing any internal safety analysis related to those claims. Left entirely unaware of the claim and the safety issues presented therein for an extended period, park operators will lose the opportunity to evaluate if and how additional safety measures should be taken as potentially hundreds of thousands of additional riders continue to board the ride. The opportunity to perform timely and efficient safety investigations, to coordinate for additional operational or mechanical inspections or changes deemed necessary, to capture and maintain data and records of significance, to assess and/or implement changes (to ride related signage, ride worker training policies, standard operating procedure policies, exemplar seats, etc.) and much more will be all but lost. This is especially true in a case like Fabricants', where the Kingda Ka ride cycle at issue was completely unremarkable with no mechanical problems, operational problems or other injuries reported.

Additionally, in an industry where a vast majority of ride workers are seasonal employees who often move on to other professions after spending just a season or two operating and attending rides, park operators will lose the opportunity to efficiently gather critical facts and data concerning claims and related safety issues from seasonal employees. By the time an unreported and untimely claim finally reaches the stage of litigation, seasonal employees and important data could no longer be available. Park operators will be severely prejudiced in their ability to defend against the claim as a result.

Fabricants' arguments essentially fail to acknowledge the directly relevant underlying policy considerations outlined above, going as far as claiming these policies have "no bearing on" the questions presented in this appeal. (Appellants Brief, p. 51). Instead, the Fabricants attempt to place this Court's focus on broader indirect concepts of statutory interpretation and definitions apparently pulled from a <u>Merriam Webster Dictionary</u>. Not only are Fabricants' arguments in this regard profoundly flawed, but they are just as profoundly unconvincing.

 In requesting that the Third Circuit reverse the district court's ruling as to Six Flags, the Fabricants make the critical error of completely failing to consider or apply the directly on-point legislative history and underlying policies behind CARSA, APSFLA and N.J.A.C. §5:14A, *et seq*. Even further, considering the

legislature's firm awareness that all aspects of these regulations are rigorously administered and enforced by the DCA, the Fabricants fail to consider that the legislature intended to leave the construction of and determinations about the conspicuousness of Injury Reporting Requirement Signs up to the expert DCA inspectors tasked with performing constant inspections at various amusement parks throughout the entire State.

Significantly, despite there being absolutely no evidence suggesting the Park's Injury Reporting Requirement Signs were blocked from plain sight or incapable of being read by patrons, the Fabricants desperately create and base arguments upon nonexistent scenarios where the signs are "curtained or routinely covered in dirt" or "in such microscopically small print that they could not be seen." (Appellant Brief p. 49-50). There are no facts or evidence to suggest these conditions *ever* existed at the Park, and these arguments therefore serve as nothing more than an unnecessary distraction that have no bearing on the issues presented to this Court. In fact, if the record contained even an inkling of such evidence, which it does not, Six Flags' motion for summary judgment would have likely been analyzed differently by the district court.

Based upon the above, the district court correctly interpreted and applied the relevant history and underlying policy considerations before granting summary judgement to Six Flags. The district court's decision should be affirmed as a result.

2. **There is no legitimate reason or basis to disrupt the DCA's findings concerning the Park's Injury Reporting Requirement Signs being in full compliance with controlling regulations**

The district court's decision should also be affirmed as to Six Flags because there remains no legitimate reason or basis to disrupt the DCA's findings concerning the Park's compliance with the Injury Reporting Requirement Signs requisite. Should the DCA's findings be disrupted under the theories advanced by the Fabricants, Six Flags' compliance with CARSA's Injury Reporting Requirement signs mandate would become a nullity and a slippery slope towards eradicating the impact of the DCA's oversight would be created by the judiciary.

As outlined above, certified DCA inspectors have already determined, both indirectly and through an affirmative writing, that the Park's Injury Reporting Requirement Signs are in full compliance with controlling regulations. The April 21, 2023 written findings of DCA inspector Kevin Nolan, paired with the affidavits of Six Flags representatives Edward Zakar and Brian Chamberlain outlining the Injury Reporting Requirement Signs present at the Park sequentially from 2013 through April 2023, confirm that the signs in place as of April 2017 were DCA

inspected and deemed compliant in all regards. (Appx291) (Appx286-289). Since DCA inspector Nolan directly inspected and evaluated these signs, it is important to note that he identified absolutely no violations or problems related to the conspicuousness of the signs or otherwise.

In addition to DCA inspector Nolan's written findings, there exists no evidence suggesting that the DCA has ever failed to complete a mandated inspection at the Park or has ever found the Park's Injury Reporting Requirement Signs to be in violation of any aspect of the controlling regulations.

Unlike Fabricant, Sugarman or even members of the State's judiciary, the State's DCA inspectors have the benefit of conducting frequent in-person evaluations of Injury Reporting Requirement Signs at various amusement parks throughout the entire State of New Jersey. These DCA inspectors are employed professionals who spend their everyday lives walking through various amusement parks while evaluating and enforcing the applicable regulations. It is the findings of these DCA inspectors, not the unsupported and personal opinions of Fabricant or Sugarman, the latter of whom all but admitted during his deposition that he has no amusement park experience and is entirely uneducated on New Jersey's relevant regulatory framework, that may carry weight as courts decide as a matter of law any issues concerning conspicuousness.

As correctly noted by the district court, an amusement park operator's compliance with the Injury Reporting Requirement Signs requisite would be rendered a nullity if claimants such as Fabricant were permitted to circumvent the DCA and to save untimely claims purely through the opinions of hired guns such as Sugarman. The Injury Reporting Requirement Sign provisions of CARSA and N.J.A.C. §5:14A would be rendered all but meaningless, as would all DCA determinations concerning compliance with these provisions, as all future plaintiffs could easily overcome their own failure to timely report an injury by simply paying for a proposed expert to offer opinions attacking the conspicuousness of the signs.

Taking it even a step further, future plaintiffs could just as easily pay for proposed experts to save untimely claims by offering up opinions strategically centered on other undefined language utilized in the statute. For example, a proposed expert could save an untimely claim by opining that a location for reporting injuries as designated by the park operator is not a "reasonable walking distance" away from an area containing amusement rides. N.J.S.A. §5:3-57(b). As another example, an untimely claim could be saved by any proposed expert willing to assess what are typically rather large "entrance and exit" areas meant to accommodate hundreds and to then opine that the specific location of an Injury

Reporting Requirement Sign is not sufficient enough to qualify as being posted at an "entrance" or "exit" as required by N.J.S.A. §5:3-57(c).

Even beyond the Injury Reporting Requirement Signs at issue, the overall purpose and effectiveness of CARSA and N.J.A.C. §5:14A will slowly become eradicated if proposed experts hired by the plaintiff's bar can strategically nitpick and craft opinions centered around any undefined term or phrase used in the regulations. As just one example, even if an individual amusement ride had passed all relevant DCA inspections related to its required ride specific posted warning notices and was awarded a permit to operate, a future plaintiff who blatantly ignored or failed to obey those warnings could simply pay an expert to opine that the ride's warnings were not "prominently displayed" or posted "in a conspicuous public place on or near the ride" and that he or she therefore did not have an obligation to comply. N.J.S.A. §5:3-36.2; N.J.A.C. §5:14A-4.12; (SA399-400, ride-specific Kingda Ka signage including statutory required notice).

Should Fabricants' untimely claim be allowed under the facts and theories presented, future plaintiffs will soon follow suit in various and even unpredictable ways. Over time, the underlying policies behind the State's amusement regulations, the compliance efforts by the State's amusement park operators, and the decision-making effect of the DCA will become a nullity. The ultimate result will

negatively impact the safety of the State's amusement rides and the important matter of public policy that is the allocation of risks and costs of the State's amusement parks.

When the underlying policy behind CARSA and all future risks are properly balanced and considered, it becomes readily apparent that the district court's decision to not disrupt the DCA's findings concerning the Park's Injury Reporting Requirement Signs was the correct one. The district court's ruling as to Six Flags should therefore be affirmed.

## C. THE OPINIONS OF FABRICANTS' PROPOSED HUMAN FACTORS EXPERT ARE UNRELIABLE, INNACCURATELY DESCRIBED, AND DO NOT PRESENT A SUFFICIENT BASIS TO REVERSE THE DISTRICT COURT'S RULING

The district court thoroughly summarized and analyzed the totality of all opinions proposed by Sugarman before reaching a proper ruling in favor of Six Flags. Although the court did not find it necessary to rule on the admissibility of Sugarman's opinions, the full extent of Sugarman's opinions were undeniably carefully balanced and considered by the district court before a ruling was made.

Considering Fabricants' contention that the district court "ignored" Sugarman's opinions in its legal analysis, and because Fabricants' arguments are centered around attempts to differentiate this case from <u>Doerflein</u> solely through

the self-proclamation that Sugarman's opinions are "objective", Six Flags must draw this Court's attention to a series of alarming issues with Sugarman's proposed opinions themselves. (Appellant's Brief p. 52). The allegedly "objective" proposed opinions of Sugarman are, in reality, not supported by any actual accepted or applicable standard and instead rest solely on Sugarman's own personal and subjective beliefs.

The ANSI Z535.2 standard relied on by Sugarman is, by its own text, a "completely voluntary" standard. (SA476, ANSI Z535.2 at p. i). It is not adopted, referenced or incorporated into the New Jersey amusement regulations governing this matter. While the regulations do specifically adopt and incorporate other voluntary ANSI standards such as ANSI B77.1 and ANSI/IAF-9, the regulations go out of their way to not incorporate ANSI Z535.2. N.J.A.C. §5:14A-1.1

The ANSI Z535.2 standard is not related to the category of signage at issue in this case, that being Injury Reporting Requirement Signs containing only information about injury reporting obligations to preserve legal rights. ANSI Z535.2 concerns only signs, labels, decals, placards or other markings that relay safety information. (SA488-490, ANSI Z535.2 at p. 1 and 3). The standard is designed for safety signs meant to alert persons to physical safety dangers and hazards. The content of the Injury Reporting Requirement Signs at the Park,

however, is not meant to contain any safety related information. The Injury Reporting Requirement Signs only concern a reporting requirement to preserve legal rights and literally begin with "In order to bring suit against…" (SA392-397, 03/09/22 Sala report at Appendix A).

Despite Sugarman's attempt to apply ANSI Z535.2 to the conspicuousness of the Injury Reporting Requirement Signs at the Park, Sugarman admits that the Injury Reporting Requirement signs fall outside the scope the standard:

> Q: So signage about preserving legal rights is outside the scope of this document?
> A: Yes.
> (Appx248, 04/15/25 Sugarman dep T. 89:9-89:12).

Furthermore, ANSI Z535.2 also has nothing to do with establishing *conspicuous* or *effective* standards for any category of signage. As evidenced by the explicit purpose contained within the standard itself, it is a voluntary standard aimed at helping to develop *consistent layout and design* of safety signs:

> "2.2   Purpose
>
> The purpose of this standard are to:
>
> (d) Establish a uniform and consistent visual layout for safety signs to be located in facilities and in the environment;
> (e) Minimize the proliferation of designs for environmental and facility safety signs; and
> (f) Establish a national uniform system for signs that communicate safety information."

(SA488, ANSI Z535.2 at p. 1, Section 2 Scope and Purpose).

Remarkably, Sugarman actually believes there is a "defect" and "deficiency" in the exact ANSI Z535.2 standard he simultaneously claims is a reliable standard for him to base his opinions on in this matter. (Appx245-246, 04/15/25 Sugarman dep Tr. 75:10-81:23).

Regarding the "general conspicuity factors" and "specific conspicuity factors" Sugarman bases his proposed opinions on, he was incapable of citing to any particular source establishing these factors. (Appx214-216; Appx241-243, 04/15/25 Sugarman dep Tr. 58:9-69:19). Sugarman instead admitted he'd essentially created his own factors for conspicuity that were "consolidated according to my own knowledge and put into my own words and my own phrases…" (Appx241-243, 04/15/25 Sugarman dep Tr. 58:9-69:19). The same goes for Sugarman's definition of "conspicuous" as contained with his report, which he all but admitted is only his own personal definition of the term. (Appx214; Appx240-243, Sugarman 04/15/25 dep Tr. 57:3-68:7).

The 1989 treatise cited by Sugarman, "What is A Warning And When Will It Work", is just as inapplicable as ANSI Z535.2. (SA524-530). The treatise's primary concern is "the prevention of accidents", and it has nothing to do with establishing conspicuousness for injury reporting notice signs. (SA525, Treatise at p. 1). This

outdated treatise bears no connection to the amusement industry and goes as far as stating "Even a very conspicuous label can be ignored". (SA527, Treatise at p. 3, Processing the Message, Format).

Aside from Sugarman's opinions being unreliable due to their being grounded on nothing but inapplicable standards and personal subjective beliefs, it is noteworthy that Sugarman is not qualified to provide expert testimony that would benefit a jury in this amusement industry case. If an expert's area of expertise is "adjacent to, but not actually encompassing, the subject matter of his testimony, he may be deemed unqualified." Player v. Motiva Enter., LLC, No. 02-3216, 2006 WL 166452, at *5 (D.N.J. Jan. 20, 2006). A party cannot qualify an expert by showing he has general knowledge or training that would qualify him or her to opine on some other subject. See Diaz v. Johnson Matthey, Inc., 893 F. Supp. 358, 373 (D.N.J. 1995).

Sugarman has absolutely no experience with signage policies or issues in the amusement park setting. He has no idea how amusement parks other than Six Flags post their Injury Reporting Requirement Signs, and is completely unfamiliar with New Jersey's regulatory framework, standards, and requirements as a whole. (Appx235-274, Sugarman 04/15/25 dep Tr. 35:16-36:5, 96:3-99:6, 116:21-117:9, 103:14-108:21, 123:3-124:4, 132:20-135:10, 186:14-188:22 and 190:17-190:23). It

appears Sugarman was not even honest about his lack of history being admitted to testify in amusement park signage cases. The one prior amusement park case he claims to have testified in, <u>Rowse</u>, was actually a Colorado mountain resort case that did not involve an amusement park or ride at all. In fact, somewhat further showcasing his lack of qualifications to offer reliable opinions about amusement rides and amusement park policies, Sugarman's opinions in <u>Rowse</u> were partially precluded due to his improper attempt to apply ASTM standards meant for amusement rides and devices to a non-amusement ride. <u>Id.</u> at *13.

In the instant matter before the Third Circuit, when all the above is considered, this Court should not accept Fabricants' contentions that Sugarman's opinions are "objective" or reliable. Sugarman's proposed opinions are nothing more than personal and subjective opinions made by one who lacks the specific knowledge and experience needed to offer expert testimony in a case involving an extremely unique and heavily regulated amusement park setting. Even more, Sugarman's proposed opinions are far from objective as they lack true factual support and are based upon nothing more than wildly inapplicable and unauthoritative standards.

Nevertheless, the district court's ultimate decision to grant summary judgement to Six Flags without ruling on the admissibility of Sugarman's opinions was correct and appropriate. For all the reasons set forth above in the other sections

of this submission, including reasons related to the policies underlying CARSA and court opinions in cases such as <u>Lopez</u> and <u>Doerflein</u>, the district court's handling of Sugarman and granting of summary judgment to Six Flags was appropriate.

## CONCLUSION

For the reasons set forth above, Six Flags respectfully requests that this Court affirm the district court's decision to grant summary judgment in favor of Six Flags.

Dated: November 19, 2025        Respectfully Submitted,

<u>/s/ Christopher A. Gulla</u>
Christopher A. Gulla, Esq.
Murphy Sanchez, PLLC
(856) 444-5503
cgulla@murphysanchez.com

## <u>CERTIFICATION OF ADMISSION TO THE BAR</u>

I, Christopher A. Gulla, Esq., hereby certify the following:

1. That I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

2. Pursuant to 28 U.S.C. §1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: November 19, 2025

<div style="margin-left:40%">

/s/ Christopher A. Gulla
Christopher A. Gulla, Esq.
Murphy Sanchez, PLLC
309 Fellowship Road, Suite 200
Mount Laurel, NJ 08003
(856) 444-5503
cgulla@murphysanchez.com
Counsel for Defendant-Appellee Six Flags
Great Adventure LLC

</div>

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND LOCAL RULE 31.1

I, Christopher A. Gulla, Esq., pursuant to Fed. R. App. P. 32(a)(7)(C) hereby certify the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,442 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using the 365 version of Microsoft Word in 14-point Times New Roman.

3. This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and a virus check was performed on this brief using Kaspersky Security 10.1.2 virus detection program, and that no virus was indicated.

Dated: November 19, 2025

> /s/ Christopher A. Gulla
> Christopher A. Gulla, Esq.
> Murphy Sanchez, PLLC
> 309 Fellowship Road, Suite 200
> Mount Laurel, NJ 08003
> (856) 444-5503
> cgulla@murphysanchez.com
> Counsel for Defendant-Appellee Six Flags
> Great Adventure LLC

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I, Christopher A. Gulla, hereby certify pursuant to Fed. R. App. P. 25(d) that, on November 19, 2025, the foregoing Brief and Supplemental Appendix for Defendant-Appellee Six Flags Great Adventure LLC was filed through the CM/ECF system and served electronically.


Dated: November 19, 2025

<u>/s/ Christopher A. Gulla</u>
Christopher A. Gulla, Esq.